

IDS SCHEER AMERICAS, INC.

        Plaintiff,

      v.

UNITED STATIONERS TECHNOLOGY
SERVICES LLC

        Defendant.

Civil Action No.

## COMPLAINT

IDS Scheer Americas, Inc. ("IDS"), by and through its counsel, Pepper Hamilton

LLP, brings this Complaint against United Stationers Technology Services LLC ("United

Stationers") and in support thereof, avers the following:

## THE PARTIES

1.      IDS is a software consulting and implementation firm that offers software

from, among others, SAP. IDS is incorporated under the laws of the State of Delaware with its

principal place of business in Berwyn, Pennsylvania.

2.      United Stationers is a wholesale distributor of business products. United

Stationers is incorporated under the laws of the State of Illinois with its principal place of

business at One Parkway North Boulevard, Suite 100, Deerfield, Illinois 60015.

## JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C.

§1332(a), as the parties are citizens of different states and the amount in controversy exceeds the

sum of $75,000.

4.     Venue is proper in this district because Plaintiff and Defendant, in Section 16.10 of the Master Consulting Services Agreement, the contract which gives rise to the claims in this action, designated the state or federal courts located within Westchester County, New York as the exclusive venue for all actions and proceedings arising out of or related to the Master Consulting Services Agreement.

## FACTUAL BACKGROUND

5.     On or about December 18, 2008, IDS and United Stationers entered into a Master Consulting Services Agreement, a copy of which is attached as Exhibit "A."

6.     Pursuant to the Master Consulting Services Agreement, IDS agreed, among other things, to perform consulting services and provide certain deliverables to United Stationers and United Stationers agreed to pay IDS for its work.

7.     In addition, during the time that IDS and United Stationers worked together, the parties entered into various Statements of Work and Change Orders. Copies of the Statements of Work and Change Orders are attached hereto as Exhibit "B."

8.     In accordance with the parties' agreements, IDS performed consulting services and provided deliverables to United Stationers.

9.     IDS billed United Stationers for its work and services in accordance with the parties' agreements.

10.     Despite repeated demands from IDS, United Stationers has failed to pay $615,342.96 that is due and owing to IDS for work and services.

## COUNT I
## BREACH OF CONTRACT

11.     IDS incorporates by reference paragraphs 1 through 10 above, as if fully set forth herein.

12.     Pursuant to the parties' agreements, United Stationers authorized and IDS agreed to, among other things, to provide consulting services to United Stationers.

13.     United Stationers agreed to pay for the work and services provided by IDS.

14.     All conditions precedent to IDS's right to recover payment from United Stationers have occurred.

15.     Despite demands by IDS, United Stationers has failed to pay $615,342.96 plus interest for the services and work provided by IDS.

16.     As a direct and proximate result of United Stationers breach of contract, IDS has been damaged in the amount of $615,342.96 plus interest and costs.

WHEREFORE, plaintiff, IDS Scheer Americas, Inc., demands judgment against defendant, United Stationers Technology Services LLC, in the amount of $615,342.96 plus continuing interest, costs, expenses and such further relief as the Court deems just and appropriate.

## COUNT II
## UNJUST ENRICHMENT

17.     In the alternative to Count I, IDS incorporates by reference paragraphs 1 through 16 above, as if fully set forth herein.

18.     United Stationers requested that IDS provide consulting services with the intention to induce IDS to provide such services.

19.     IDS provided services to United Stationers as a result of the request by United Stationers.

20.     IDS provided consulting services to United Stationers with the reasonable expectation of payment therefor.

21.     United Stationers has been unjustly enriched at IDS's expense and injustice can be avoided only through payment by United Stationers to IDS of the value of the services IDS provided to United Stationers.

22.     The fair market value of the service provided by IDS to United Stationers is at least $615,342.96.

WHEREFORE, plaintiff, IDS Scheer Americas, Inc., demands judgment against defendant, United Stationers Technology Services LLC, in the amount of $615,342.96 plus continuing interest, costs, expenses and such further relief as the Court deems just and appropriate.

Dated: February 24, 2009

Respectfully submitted,

Adam B. Michaels (AM 9120)
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 808-2700

Michael S. Hino
(*pro hac vice application pending*)
PEPPER HAMILTON LLP
400 Berwyn Park
899 Cassatt Road
Berwyn, PA 19312-1183
(610) 640-7800

Attorneys for Plaintiff
IDS SCHEER AMERICAS, INC.

# Exhibit A

# MASTER CONSULTING SERVICES AGREEMENT

This Master Consulting Services Agreement (this "Agreement") is made as of December 18, 2008, by and between United Stationers Technology Services LLC, an Illinois corporation ("USTS"), and IDS Scheer Americas, Inc., a Delaware corporation ("Consultant").

## RECITALS

WHEREAS, USTS wishes to engage Consultant for various consulting services; and

WHEREAS, Consultant is in the business of providing, and wishes to provide, such services.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing and the mutual promises and covenants contained herein, the parties agree as follows:

1.  **Definitions**

    Capitalized terms used herein without definition shall have the meanings ascribed to them on Exhibit A.

2.  **Consultant's Services**

    2.1.  **Services.** Consultant agrees to provide personnel, its expertise and the professional, technical and project management services (the "Services") as are called for by each statement of work entered into hereunder (each, a "Statement of Work"). Consultant shall be responsible for providing its own resources and equipment as necessary to provide the Services. For purposes of this Agreement, Services do not include hosting services or turn key solution services.

    2.2.  **Deliverables.** Consultant shall provide and deliver to USTS each Deliverable described in the applicable Statement of Work on or before the due dates set forth in the applicable Statement of Work.

    2.3.  **Milestones and Phases.** Consultant shall complete its obligations in a timely manner in accordance with the milestone dates set forth in the applicable Statement of Work. Services may be provided in a number of phases or other subunits as set forth in the applicable Statement of Work.

    2.4.  **Personnel.**

    2.4.1.  **Generally.** Consultant and USTS agree to specify certain key full-time roles identified in the applicable Statement of Work (the "Key Positions"), as well as such other qualified professionals as necessary to properly perform Consultant's obligations under this Agreement.

218v1

Consultant agrees that any Consultant project team member holding a Key Position must be approved in advance by USTS and that it shall make a reasonable effort to not voluntarily remove any individual initially or subsequently in a Key Position during the performance of the applicable Statement of Work, without prior written approval of USTS and shall use commercially reasonable efforts to maintain consistent staffing of personnel in non-Key Positions.

2.4.2.  **Project Manager.** Consultant shall assign a project manager under each Statement of Work (the "Consultant Project Manager") to interface with the USTS Project Manager. Consultant agrees that each Consultant Project Manager shall be a Key Position.

2.4.3.  **Replacements.** Consultant shall replace any of its Personnel that USTS reasonably requests to have replaced. Any replacement Personnel, whether replaced upon request of USTS or otherwise, shall be individuals possessing comparable experience, qualifications and credentials as the persons being replaced and, in the case of Key Positions, shall be subject to USTS's prior written approval. In the case of any permitted replacements of Personnel, Consultant shall use commercially reasonable efforts to provide overlapping service time with replaced Personnel. In any time and materials engagement, Consultant shall not charge for any replacement Personnel in Key Positions during any overlapping service with the Personnel being replaced and up to their first eighty (80) hours of service thereafter in the case of a Key Position and up to forty (40) hours of service thereafter in the case of other Personnel.

2.4.4.  **Use of Subcontractors.** Consultant shall not use any Subcontractors without providing the prior written notice to USTS. Consultant shall not be relieved of its obligations under this Agreement by use of any such Subcontractors and shall be responsible for any breach hereof effected by a Subcontractor. If USTS determines that the performance or conduct of any Consultant Subcontractor is unsatisfactory, USTS may notify Consultant of its determination in writing, indicating the reasons therefor, in which event Consultant shall promptly take all necessary actions to remedy the performance or conduct of such Subcontractor.

2.4.5.  **Certain Transfers.** Consultant shall not without the prior approval of USTS, which consent shall not be unreasonably withheld or delayed, permit any "Restricted Person" (as defined below), to provide any services to the specified USTS competitors Staples, Office Max, Office Depot, SP Richards, eCommerce Industries, Inc., Tech Data, Ingram and Synnex (and each of their affiliates and successors) either during the time such Restricted Person is engaged or assigned to provide similar consulting Services to USTS or for one (1) year after such Restricted Person ceases to provide similar consulting Services to

USTS in the case of SP Richards and eCommerce Industries, Inc. or for six (6) months in the case any of the other specified USTS competitors. For purposes hereof, a "Restricted Person" is any person who provides consulting Services to USTS under this Agreement or any Statement of Work and who has been significantly exposed to any of USTS's Confidential Information. Notwithstanding the foregoing, this provision shall not apply to any Restricted Person providing training, installation, or consultation services on Consultant's ARIS business process management software.

3. **Additional Requirements Applicable To All Statements Of Work**

3.1. **Compatibility.** Consultant agrees that it shall make commercially reasonable efforts so that the services, equipment, networks, software and other resources utilized or provided by Consultant in connection with the Services (collectively, the "Provided Resources") shall be compatible with, the services, systems, items, and other resources of USTS and its other third party service providers with which they will interoperate (collectively, the "USTS Resources").

3.2. **Cooperation.** Consultant shall cooperate as reasonably requested with other service providers of USTS to coordinate the provision of Services with the services and systems of such other service providers. Such coordination shall include: (i) facilitating with such other relevant service providers the timely resolution of all problems that may arise and impact the Services or the provision thereof; (ii) providing information concerning the Services and Provided Resources; and (iii) providing reasonable access to and use of the Provided Resources.

3.3. **Root Cause Analysis.** Upon Consultant's discovery of, or, if earlier, Consultant's receipt of a notice from USTS in respect of Consultant's failure to provide any of the Services in accordance with this Agreement, Consultant shall promptly perform a root-cause analysis to identify the cause of such failure. Consultant shall promptly provide USTS with a written report detailing the correction of such failure and providing USTS with reasonable evidence that failures within Consultant's control will not recur.

3.4. **Viruses; Disabling Devices.** Intentionally deleted.

3.5. **Location of Services.** Unless otherwise agreed in writing in advance by USTS, which agreement may be given or refused in USTS's sole discretion, Consultant shall conduct all aspects of the Services hereunder within the United States of America.

4. **USTS's Responsibilities**

4.1. **Functions.** USTS agrees to provide the functions specifically identified as USTS functions under the heading "USTS Functions" in the applicable Statement of Work. USTS may use subcontractors to perform any service required to be performed by it hereunder.

4.2.  **Personnel.** USTS shall assign a project manager under each Statement of Work (the "USTS Project Manager") to interface with the Consultant Project Manager and shall assign such other personnel as it deems appropriate. USTS may, without the need for approval of Consultant, replace any USTS personnel working in connection with any Statement of Work. USTS shall be responsible for the performance of its employees and agents and for the accuracy and completeness of all data and information provided to Consultant by USTS for purposes of the performance by Consultant of the Services hereunder.

4.3.  **Other responsibilities.** In addition to USTS's responsibilities as set forth in a Statement of Work, USTS shall cooperate with Consultant in the performance of Services under a Statement of Work by providing Consultant with timely access to data, information and personnel of USTS and, where agreed to by USTS in connection with Services to be rendered at a USTS location, reasonable facilities to enable provision of the Services. USTS acknowledges, understands, and agrees that Consultant's performance of Services is dependent upon timely decisions, approvals and completion of USTS responsibilities specified in a Statement of Work and the Agreement. Consultant cannot be held responsible for delays which are a result of USTS' failure to provide timely responses or completion of USTS' responsibilities as identified in the Statement of Work.

5.  **Acceptance Testing.**

5.1.  **Testing Process.**

5.1.1.  USTS shall have the right to review any Deliverable to be provided by Consultant to USTS under this Agreement and shall have the right to either accept or reject each such Deliverable. After Consultant's delivery of any Deliverable, USTS shall, within a reasonable time not to exceed ten business days, test the Deliverable using the applicable test procedures and standards set forth in the applicable Statement of Work or such other standards as are mutually agreed upon in writing, to determine whether such Deliverable (i) meets the applicable specifications or acceptance criteria set forth in the applicable Statement of Work, (ii) is in compliance with the warranties of Section 11.1 , and (iii) meets such other criteria as are mutually agreed upon in a written Change Order (the criteria described in the foregoing clauses (i), (ii) and (iii) collectively, the "Acceptance Criteria").

5.1.2.  [INTENTIONALLY DELETED]

5.1.3.  After USTS has completed the testing described in Section 5.1.1, USTS shall notify Consultant in writing either that: (i) the Deliverable meets the Acceptance Criteria and acceptance of such Deliverable has occurred ("Acceptance"); or (ii) the Acceptance Criteria have not been met. If USTS fails to notify Consultant within the timeframe stated in Section 5.1.1, then, unless otherwise agreed in writing by Consultant and USTS, the Deliverable will be deemed accepted by the Consultant.

5.2. **Cure.** If USTS determines that a Deliverable does not conform to the applicable Acceptance Criteria and notifies Consultant, including with such notice an exception report describing the nonconformity (the "Exception Report"), Consultant shall promptly investigate the alleged nonconformity, commence correction of such nonconformity and agree with USTS on a time frame for correction of the nonconformity. Upon Consultant's notice to USTS that Consultant has cured such nonconformity, USTS shall re-test the defective component or deliverable as provided in Section 5.1.

5.3. **Omitted Test Criteria.** To the extent that any Deliverable's specific testing criteria has been omitted from or not developed in the Statement of Work, USTS's testing criteria shall be that the tested items meet the requirements of this Agreement and applicable Statement of Work to USTS's reasonable satisfaction.

6. **Changes in Scope or Additional Services.** USTS may at any time, and from time to time, request that Consultant perform additional services for USTS. Within a reasonable period (not to exceed ten (10) Business Days unless such other time frame is agreed upon by the parties) after receiving such a request from USTS, if Consultant elects to perform such additional services, then Consultant may prepare and submit a written proposal in the form of a Statement of Work to USTS. No additional Statement of Work shall be binding upon USTS or Consultant unless executed and delivered by an authorized signatory of such party. Any additional Statement of Work shall be governed by the terms and conditions of this Agreement.

7. **Price and Payments**

7.1. **Fees.** Unless otherwise indicated on the Statement of Work, all Statements of Work will be on a time and materials basis. Except as specifically provided in this Section 7.1, the fees payable to Consultant under this Agreement shall consist of the fees specifically delineated as such in a Statement of Work (the "Fees"), and no other fees or charges of any kind whatsoever shall be payable or reimbursable under or in respect of this Agreement.

7.2. **Expenses Reimbursable.** USTS shall reimburse Consultant for reasonable out of pocket travel expenses, actually incurred by Consultant employees directly providing Services under a Statement of Work and, unless otherwise agreed in a Statement of Work, only if and to the extent incurred in accordance with Consultant's travel expense policies in effect as of the Effective Date and in the case of international travel approved in advance by USTS.

7.3. **Invoicing and Payment.**

7.3.1. **Milestone Invoicing; Holdbacks.**

With respect to any Statement of Work, or portion thereof, that designates fees to be paid on a Milestone basis, upon the occurrence of each event designated as a "Milestone" on the applicable Statement of Work, Consultant may invoice USTS for the amount set forth as the

"Amount" to be invoiced in such Statement of Work in connection with the applicable "Milestone."

7.3.2. **Expense.** Consultant shall invoice USTS monthly for expense reimbursements permitted hereunder.

7.3.3. **Detailed invoices.** Each invoice rendered by Consultant shall include a reasonably detailed summary of the Fees and expenses reflected therein, separately identifying the Fee and expense components thereof by category including that portion of the Fees that are for consulting services.

7.3.4. **Payment.** USTS shall pay each invoice properly issued by Consultant hereunder within thirty (30) calendar days after receipt thereof. USTS may, however, withhold a portion of payment of any invoiced amounts that USTS disputes in good faith, pending resolution of the matter. Upon USTS's request, Consultant shall cooperate with USTS to enable electronic payment.

7.3.5. **|INTENTIONALLY DELETED|**

7.3.6. **Fee Adjustments.** For any Services to be performed on a fixed-fee basis, USTS shall have no obligation to pay Consultant any amounts in excess of such fixed fees unless otherwise agreed upon by the parties in writing.

7.3.7. **Fixed Price Scoping.** In the event the parties agree to a Statement of Work that is fixed price, Consultant shall perform the services identified in the Statement of Work. Any Deliverables that are not specified in the Statement of Work must be agreed upon in writing by both parties and reflected in a change order.

7.3.8. **Taxes.** USTS shall pay any and all applicable taxes, however designated, incurred as a result of or otherwise in connection with this Agreement or the Services, excluding taxes based upon the net income of Consultant. Consultant shall separately state all taxable and non-taxable charges on all invoices issued to USTS. Consultant shall separately state applicable taxes on charges for goods and services provided under this Agreement. Consultant shall notify USTS if Consultant concludes that a tax liability for Consultant Personnel may result due to the duration of any assignment of Consultant Personnel to a USTS designated location. Upon receipt of such notice USTS shall cooperate with Consultant to change the assignment of the affected consultant in order to minimize the tax liability of the Consultant Personnel.

7.4 **|INTENTIONALLY DELETED|**

## 8. Project Management and Dispute Resolution

8.1. **Project Management.** The Consultant Project Manager shall provide overall management direction for the applicable Statement of Work, provided that no due

date shall be assigned to a USTS responsibility without the prior written approval of the USTS Project Manager and no task shall be assigned to USTS except as identified in the Statement of Work or a Change Order. The USTS Project Manager and Consultant Project Manager shall consult with each other with regard to project management and technical and design decision making affecting the applicable Statement of Work. The Consultant Project Manager shall at all times maintain up to date and available to the USTS Project Manager an overall schedule of status and due dates with respect to the applicable Statement of Work. The Consultant Project Manager, together with such other Personnel as requested by the USTS Project Manager, shall participate in periodic status review meetings as requested by the USTS Project Manager. Such meetings shall be held at USTS's facilities. unless otherwise agreed by the USTS Project Manager.

8.2. **Delays, Defaults and Assumptions.**

8.2.1. **Notification and Requirements.** In the event of any USTS Interference, Consultant shall, as soon as practicable after the occurrence of such USTS Interference, notify USTS in writing of the particulars of the USTS Interference, the estimated impact thereof on the applicable timetable under the Agreement and the estimated amount, if any, of additional Services required. If USTS disputes any of the matters set forth in Consultant's notice, the matter shall be resolved by sending it to the project steering committee, if any, and through the dispute resolution process of Section 8.3 if there is no committee or if the committee is not able to resolve the dispute. If, and to the extent that USTS does not cure the USTS Interference and it directly causes an increase of at least three (3) Business Days of Services to complete the tasks set forth in the applicable Statement of Work or otherwise directly causes a failure by Consultant to comply with the requirements hereof, to the extent set forth in Consultant's notice, Consultant shall be relieved of its obligation of timeliness hereunder and, as Consultant's sole and exclusive remedy for the USTS Interference, Consultant shall be entitled to invoice USTS, and USTS shall be required to pay for Consultant's direct damages resulting from the USTS Interference, not to exceed the cost of any net increased Services to the extent directly resulting from the USTS Interference measured at the applicable T&M Rates.

8.2.2. **Approvals.** USTS's failure to give Acceptance of a Deliverable hereunder shall not constitute a USTS Interference.

8.3. **Dispute Resolution.**

8.3.1. **Dispute Resolution Procedure.** Any dispute between the parties as to either the interpretation of any provision of this Agreement or the performance by Consultant or USTS hereunder shall be resolved as specified in this Section 8.3.

a. Upon the written request of either party, each of the parties shall appoint a designated representative who does not devote substantially all of his or her time to performance under this Agreement and who, in the case of USTS, shall be a Senior Vice President (or more senior corporate officer), and in the case of Consultant, a Senior Vice President or Managing Director, (or more senior corporate officer), to meet for the purpose of endeavoring to resolve such dispute.

b. Such representatives shall discuss the problem and negotiate in good faith in an effort to resolve the dispute promptly and without the necessity of any formal proceeding relating thereto.

c. If any dispute arises between the parties, and the disputed matter has not been resolved by the designated representatives within ten (10) Business Days after such dispute has come to their attention, or such longer period as agreed to in writing by the parties, each party shall have the right to commence any legal proceeding as permitted by law.

8.3.2. **Agreements in writing**. No agreement achieved under this dispute resolution process shall be binding on either party unless set forth in a writing executed by the parties hereto.

8.3.3. **Termination or Suspension of Services**. Notwithstanding anything to the contrary contained herein, and if any dispute arises between the parties which is not resolved by either the steering committee or the senior executives of both parties and goes to legal proceedings, Consultant in its sole discretion, may suspend or delay the provision of those Services to USTS that are described in a Statement of Work that is related to or the subject of the legal proceeding between Consultant and USTS until such legal proceeding is concluded. Further, in the event USTS fails to: (i) pay Consultant in a timely manner and (ii) remedy the non-payment within the cure period stated, then Consultant may suspend the performance of Services until all outstanding fees and expenses due are paid in full.

8.3.4. **Injunctive relief**. Neither party shall be obligated to follow the procedures set forth in Section 8.3.1 in order to seek injunctive relief for violations of Articles 9 or 10.

8.4. **Reporting**. In addition to any reporting required under any Statement of Work, Consultant shall provide such regular and ad hoc status reporting and support therefor concerning the Services and the Deliverables as requested by USTS from time to time. Upon USTS's reasonable request, Consultant shall establish electronic means of delivery of or access to such reporting.

## 9. Work Product and Proprietary Materials

9.1. **Project Work Product.** All Project Work Product shall be owned exclusively by USTS and, effective in each case upon its creation, is hereby assigned by Consultant and its Personnel to USTS. Consultant is hereby granted a license to such Project Work Product solely for purposes of carrying out its duties under the applicable Statement of Work and during the term thereof. To the extent that Project Work Product is created by the embedding or compiling of Consultant Work Product with newly created Work Product, USTS's ownership interest shall not extend to the Consultant Work Product included therein, but shall include the compilation or combination of Work Product that includes the newly developed Work Product. Notwithstanding the foregoing, Consultant and its employees shall be free to use and retain its and their particular preexisting or independently created General Knowledge so long as it or they apply such General Knowledge without disclosure, use or copying of any Confidential Information of USTS or USTS Work Product.

9.2. **Consultant Proprietary Materials.** The concepts, ideas, techniques and skills, method, methodologies, processes, procedures and techniques related to business processes in existence prior to the Commencement Date that are developed or continue to be developed by Consultant, and the use of technology in connection with such processes and their software, and which constitute an integral and continuing part of Consultant's business together with other Work Product of consultant that is entirely independent of Consultant's engagement hereunder are referred to herein, collectively as "Consultant Work Product." USTS understands that Consultant will be using Consultant Work Product in order to perform the Services and produce the Deliverables agreed upon in a Statement of Work. Consultant may employ, modify, disclose, and otherwise exploit the Consultant Work Product for other clients. Except as provided below, nothing contained in this Agreement shall be construed as giving USTS any right, title or interest in, or to, any of the above Consultant Work Product during and after the term of this Agreement. Consultant retains the right, title and interest in any and all improvements, modifications, enhancements, upgrades and derivatives to, or based on, the use of any of the above Consultant Work Product, to the extent they are developed during the performance of the Services but do not incorporate USTS Confidential Information or are developed independently of the Services by Consultant. Consultant Work Product shall continue to be owned exclusively by Consultant and USTS shall not have any rights thereto except as provided herein. Consultant grants USTS and its Affiliates a worldwide, perpetual, royalty-free license, including the right to sublicense to others, to use, copy, modify, and display the Consultant Work Product to the extent that it is used or embodied in Project Work Product or otherwise delivered to USTS hereunder or in connection with any deliverable provided to USTS. No separate license agreement between Consultant and USTS relating to the subject matter hereof (whether executed or dated before, concurrently with, or after the execution of this Agreement) shall be deemed to limit the effect of the foregoing or of any warranty, indemnity, limitation on liability or other provision herein unless entered into in compliance with Sections 15.1 and 15.6 hereof.

9.3. **Source Code.** In the event that Project Work Product consists of or includes Software other than Third Party Software or Consultant Work Product, Consultant shall deliver complete source code for such Software to USTS in a mutually agreed manner, together with sufficient documentation to make use of the source code to maintain, modify and fully utilize the Software.

9.4. **Treatment of and Access to USTS Data.** Notwithstanding anything to the contrary herein, USTS shall be and remain, at all times, the sole and exclusive owner of the USTS Data (including any modification, compilation, or derivative work therefrom and all intellectual property and proprietary rights contained therein or pertaining thereto) and, effective in each case upon the creation of any such items, Consultant hereby assigns the same to USTS. Consultant is hereby granted a license to use and copy the USTS Data solely for purposes of carrying out its duties hereunder during the Term and solely to the extent that Consultant requires access to such data to provide the Services as contemplated by this Agreement during the Term. Consultant shall not commercially exploit the USTS Data, or do any other thing that may in any manner adversely affect the integrity, security or confidentiality of such items, other than as specified herein or as directed by USTS in writing.

9.5. **USTS Proprietary Materials.** All Work Product owned by USTS and in existence on the Commencement Date or, if created or acquired thereafter, created or acquired entirely independently of Consultant's engagement hereunder (collectively, "USTS Work Product"), shall continue to be owned exclusively by USTS and Consultant shall not have any rights thereto, except as may be expressly provided pursuant to this Agreement.

10. **Confidential Information**

10.1. **Protection of Confidential Information.** Commencing on the Commencement Date (or, if earlier, the date on which either party disclosed Confidential Information to the other) and continuing during and after the termination or expiration of this Agreement, neither party shall disclose to any third party, and each party shall keep strictly confidential, all Confidential Information of the other, protecting the confidentiality thereof with at least the same level of efforts that it employs to protect the confidentiality of its own proprietary and confidential information of like importance to it and in any event, by reasonable means. Each party may, however, disclose the Confidential Information of the other to those of such party's Personnel engaged in a use permitted by this Agreement and with a need to know, provided that such Personnel: (i) are directed to treat such Confidential Information confidentially and not to use such Confidential Information other than as permitted by hereby and (ii) are subject to a legal duty to maintain the confidentiality thereof. Neither party shall use the Confidential Information of the other party except solely as necessary in and during the performance of this Agreement, or as expressly licensed hereunder. Each party shall be responsible for any improper use or disclosure of any Confidential Information of the other by such party's officers, partners, principals, employees, agents or independent contractors (including individuals who

hereafter become former partners, principals, employee, agents or independent contractors).

10.2.   **Exceptions.** The obligations of this Article 10 shall not apply (i) to any Confidential Information for a period longer than it is legally permissible to restrict disclosure of that item of Confidential Information or (ii) to any Confidential Information that a party can demonstrate was:

   10.2.1.   at the time of disclosure to such party, in the public domain, or after disclosure to such party, published or otherwise entered the public domain through no fault of such party;

   10.2.2.   in the possession of such party at the time of disclosure to it, if such party was not then under a contractual, legal or fiduciary obligation of confidentiality with respect thereto;

   10.2.3.   received after disclosure to such party from a third-party who had a lawful right to disclose such Confidential Information to it; or

   10.2.4.   independently developed by such party without reference to Confidential Information of the other party.

10.3.   **Required Disclosure.** Either party may disclose Confidential Information to the extent required by law or by order of a court or governmental agency; provided, however, that the recipient of such Confidential Information shall give the owner of such Confidential Information prompt notice, and shall use its reasonable efforts to cooperate with the owner of such Confidential Information, at owner's cost, if the owner wishes to obtain a protective order or otherwise protect the confidentiality of such Confidential Information.

10.4.   **Notification.** In the event of any improper disclosure or loss of Confidential Information, the receiving party shall promptly notify the disclosing party.

10.5.   **Injunctive Relief.** Each party acknowledges that any breach of any provision of this Section by either party, or its Personnel, will cause immediate and irreparable injury to the non-breaching party, and in the event of such breach, the injured party shall be entitled to seek injunctive relief in addition to any and all other remedies available at law or in equity.

10.6.   **Return of Confidential Information.** Unless a party is expressly authorized by this Agreement to retain the other party's Confidential Information, such party shall promptly return or destroy, at the other party's option, the other party's Confidential Information, and any notes, reports or other information incorporating or derived from such Confidential Information, and all copies thereof, within ten (10) Business Days of the other party's written request, and shall certify to the other party that it no longer has in its possession or under its control any Confidential Information in any form whatsoever, or any copy thereof. Notwithstanding the above, Consultant acknowledges that USTS shall have no obligation to return any Deliverables (or portions thereof) to Consultant or any notes, reports or other information incorporating or derived from such Deliverables.

11. **Warranties and Remedies**

 11.1.  **General Warranties**. Consultant represents and warrants to USTS that:

  11.1.1.  **Authority**. Consultant has the right and authority to enter into and perform this Agreement and grant the rights and licenses provided for herein.

  11.1.2.  **Services**. The Services will be performed in a timely, competent and professional manner and in accordance with the Specifications, the requirements hereof, and the applicable Statement of Work.

  11.1.3.  **Deliverables**. Each Deliverable furnished under this Agreement will meet the requirement for such Deliverable as provided for in the applicable Statement of Work. The Deliverables will be free from any material defects at the time of delivery, will satisfy the requirements set forth in the applicable Statement of Work and will include all the features and functionality described in the applicable Statement of Work.

  11.1.4.  **Computer Viruses**. Consultant will utilize its standard practices to make sure that all Deliverables that are custom developed script or constitute Software are free from Computer Viruses at the time of Delivery. Except as agreed in writing by USTS, all such Deliverables will be free from Disabling Devices. Consultant shall assist USTS in reducing the effects of any Disabling Device or Computer Virus discovered in any resource related to the provision or receipt of the Services.

  11.1.5.  **Intellectual Property**. |INTENTIONALLY DELETED|.

  11.1.6.  **Documentation**. All Documentation required in a Statement of Work (if any) is complete and accurately describes the Deliverables required to be described therein so as to enable USTS personnel with ordinary skills and experience to utilize the Deliverables for purposes for which they are being acquired by USTS.

  11.1.7.  **Information Delivered to USTS**. As of the date furnished, no statement contained in writing in any proposal materials originating from Consultant which are not based upon information received from USTS or a third party acting under the direction and control of USTS (including all communications received by USTS from Consultant) contained any untrue statement of a material fact or omitted any material fact necessary to make the statements made not misleading.

 11.2.  **Systems Warranty**. |Intentionally Deleted|

 11.3.  **Disclaimer of Warranties**. THE FOREGOING, TOGETHER WITH ALL EXPRESS WARRANTIES CONTAINED IN ANY STATEMENT OF WORK HEREUNDER OR OTHERWISE INCORPORATED HEREIN, CONSTITUTES

AND EXPRESSES THE ENTIRE STATEMENT OF THE PARTIES WITH RESPECT TO WARRANTIES. CONSULTANT AND USTS DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

11.4.  **Certain remedies.** In the event of breach of the above referenced warranties, Consultant shall promptly and at no charge to USTS (i) reperform any Services that do not meet the requirements of an applicable Statement of Work; (ii) correct all failures of any Deliverables under the applicable Statement of Work to perform in accordance with the requirements of this Agreement; and if Consultant cannot remedy such breach under (i) and (ii) then; (iii) at the option of USTS and if Consultant is not able to correct the failures of the Deliverables then refund to USTS all amounts paid to Consultant for the Services with respect to the failed Deliverables. No quality assurance, acceptance test, or other similar procedure shall be deemed to obligate USTS with respect to, or necessarily to constitute, legal "acceptance" of any deliverable and no such procedure shall be deemed to waive any right or remedy hereunder.

12.  **Limitation of Liability.**

12.1.1.  **General Limitation.** Neither party shall be liable hereunder for incidental, special, indirect, exemplary, consequential or punitive damages (including, without limitation, lost profits, savings, or opportunity costs) even if it has been advised of their possible existence. The foregoing shall not restrict a party's ability to recover actual damages for breach hereof, including the costs of obtaining replacement Services and Deliverables complying with the terms hereof. In no event shall the total and cumulative liability of either party to the other under this Agreement for any claim or claims hereunder concerning performance or nonperformance hereunder exceed the greater of one million dollars ($1,000,000) or one and seventy five one hundreths (1.75) times the aggregate amounts paid or payable by USTS and its Affiliates under the applicable Statement of Work.

12.1.2.  **Exclusions.** Notwithstanding the foregoing, there shall be no limitation on the amount of liability, and no exclusion of any types of damages for the following: (i) either party's breach of Article 9 or 10; (ii) either party's indemnification obligation pursuant to Article 12; or (iii) either party's willful misconduct.

13.  **Indemnification**

13.1.  **Mutual indemnification for injury and property damage.** Consultant shall defend, indemnify, and hold USTS, its officers, directors, employees, Affiliates and agents harmless from any loss, claims, action, expenses (including reasonable attorneys' fees and expenses) or damages (the "Claims") for personal injury or

death to any person or damage to tangible property to the extent that such Claim arises out of or results from any negligent acts or omissions or any willful or intentional misconduct by Consultant or its respective employees, officers, agents, contractors or representatives under Consultant's control during the performance of Services under a Statement of Work. Consultant shall have no liability for any Claims which are qualified as workers' compensation claims of USTS's or it's Affiliate's employees.

USTS shall defend, indemnify, and hold Consultant, its officers, directors, employees, Affiliates and agents harmless from any Claims for personal injury or death to any person or damage to tangible property to the extent that such Claims arise out of or result from any negligent acts or omissions or any willful or intentional misconduct by USTS and/or its Affiliates, or their respective employees, officers, agents, contractors or representatives under USTS control during the course of the performance of Services by Consultant. USTS and its Affiliates shall have no liability for any Claims which are qualified as workers' compensation claims of Consultant's employees.

13.2. **Consultant Intellectual Property Indemnification.** Consultant shall defend, indemnify and hold harmless USTS and its officers, directors, employees, Affiliates and agents from and against any claims and shall pay all damages, liabilities, claims and actions, and all related expenses (including reasonable attorneys' fees and expenses) arising out of any claim or allegation that the Deliverables, Work Product or any other intellectual property delivered or licensed or to which rights are otherwise acquired hereunder, and any part or parts thereof (collectively, the "IP Assets") infringes any existing patent or copyright or misappropriates the use of any trade secret, except to the extent that such infringement or misappropriation arises from (i) USTS' use of Deliverables hereunder other than as contemplated by this Agreement; (ii) USTS' failure to use corrections or modifications made available by Consultant, if such corrections or modifications would have prevented the infringement; (iii) Company's use of the Deliverables in combination with any product or information not owned or developed by Consultant nor contemplated hereunder; or (iv) information, materials, instructions or specifications (excluding this Agreement) provided by or on behalf of USTS or any third party other than Consultant. If any such Deliverables or any portion thereof, is found by final non-appealable order of a court of competent jurisdiction to be an infringement or unauthorized use, Consultant, at its sole option and expense, shall have the right to either: (i) secure a license to use such portion to enable such IP Assets to be utilized in a manner consistent with the terms of this Agreement, or (ii) replace the same with other intellectual property assets with equally suitable, functionally equivalent, compatible, non-infringing assets or services, or (iii) modify the IP Assets so that they no longer infringe or misappropriate the rights of others, while still meeting the requirements of this Agreement.

13.3. USTS shall defend, indemnify and hold harmless Consultant and its officers, directors, employees, Affiliates and agents from and against any claims (shall pay all damages, liabilities, claims and actions, and all related expenses (including

reasonable attorneys' fees and expenses) arising out of any claim or allegation that the USTS Data, USTS Work Product, USTS Confidential Information, or any other intellectual property other than the Consultant Work Product that USTS requests Consultant to use (collectively "USTS IP") in the course of performance of the Services, infringes any existing patent or copyright or misappropriates the use of any trade secret, except to the extent that such infringement or misappropriation arises from (i) Consultant's misuse of USTS IP hereunder other than as directed by USTS; or (ii) Consultant's failure to use corrections or modifications to USTS IP made available by USTS, if such corrections or modifications would have prevented the infringement.

13.4. **Procedures.** If any legal action covered by this Article 13 is commenced against a party entitled to indemnification hereunder ("Indemnified Party"), prompt written notice thereof shall be given to the party required to indemnify ("Indemnifying Party"). After such notice, if Indemnifying Party shall acknowledge in writing to Indemnified Party that the right of indemnification under this Agreement applies with respect to such claim, then Indemnifying Party shall be entitled, if it so elects, in a written notice delivered to Indemnified Party not fewer than ten (10) Business Days prior to the date on which a response to such claim is due, to take control of the defense and investigation of such claim and to employ and engage attorneys of its sole choice (absent any conflict of interest) to handle and defend same, at Indemnifying Party's expense. Indemnified Party shall cooperate in all reasonable respects with Indemnifying Party and its attorneys in the investigation, trial, and defense of such claim and any appeal arising therefrom; provided, however, that Indemnified Party may, at its own expense, participate, through its attorneys or otherwise, in such investigation, trial, and defense of such claim and any appeal arising therefrom. No settlement of a claim that involves a remedy other than the payment of money by Indemnifying Party shall be entered into without the consent of Indemnified Party, which consent will not be unreasonably withheld or delayed. After notice by Indemnifying Party of its election to assume full control of the defense of any such claim, Indemnified Party shall not be liable to Indemnifying Party for any legal expenses incurred thereafter by Indemnifying Party in connection with the defense of that claim. If Indemnifying Party does not provide notice and assume full control over the defense of a claim subject to such defense as provided in this Section, Indemnifying Party may participate in such defense, at its expense, and the Indemnified Party shall have the right to defend the claim in such manner as it may deem appropriate, at the expense of Indemnifying Party.

14. **Term and Termination**

14.1. **Term.** The initial term of this Agreement shall commence on the Effective Date and continue for three years unless otherwise terminated in accordance with this Article 14. Thereafter, unless either party gives written notice of non-renewal within thirty (30) days before or after the last day of the initial term or any renewal period, this Agreement shall automatically renew for additional one year periods. The initial term, together with all renewal periods prior to the effective date of any notice of non-renewal is referred to herein as the "Term."

14.2. **USTS Termination**.

14.2.1. **For Cause.** USTS may terminate this Agreement or any one or more Statements of Work hereunder, by written notice to Consultant, upon the occurrence of any of the following events and the continuance thereof twenty (20) Business Days (immediately upon written notice with respect to clause d below) after receipt of such written notice (any such termination, a "USTS Termination for Cause"):

a. Consultant becomes insolvent or subject to any proceeding under the federal bankruptcy laws or other similar laws for the protection of creditors.

b. Consultant materially breaches any term, provision, representation or warranty of this Agreement and such breach or default is not cured to USTS's reasonable satisfaction within such twenty (20) Business Day period.

c. Consultant's performance hereunder is delayed by a force majeure event for more than twenty (20) Business Days.

d. Consultant's breach of its obligations under Articles 9, 10 or 15, or any other breaches incapable of cure.

14.2.2. **For Convenience.** USTS may also terminate this Agreement or any one or more Statements of Work hereunder, upon thirty (30) calendar days prior written notice to Consultant for convenience (any such termination that is not a USTS Termination for Cause, a "USTS Termination without Cause").

14.2.3. **Scope of Termination.** USTS shall specify in any termination notice given hereunder whether it is terminating the Agreement, one or more specified Statements of Work or both. In the absence of any specification, USTS's termination notice shall be deemed to cover the Agreement and all Statements of Work. In the event that a termination covers less than all of the Agreement and all Statements of Work, the components not terminated shall continue in full force and effect.

14.2.4. **Suspension of Statement of Work by USTS.** In the event that USTS suspends Consultant's Services under a Statement of Work for any reason (including but not limited to a Force Majeure event), USTS shall have the right to designate such Consultant personnel or subcontractors USTS believes to be essential ("Essential Project Team Members") for the completion of the Services covered under such suspended Statement of Work ("Suspended Services"), in which case: (i) Consultant shall not reassign the Essential Project Team Members to other clients during the time the Services are suspended unless such assignment shall not prevent Consultant from resuming the Suspended Services when requested by USTS; and (ii) USTS shall reimburse Consultant for the rates stated in the suspended Statement of Work

(based upon a five day work week)in order for Consultant to keep the Essential Project Team Members available to resume Suspended Services, provided that Consultant shall to take reasonable steps to mitigate the cost to USTS, which steps may include but shall not be limited to assigning Essential Project Team Members to other client projects where reasonably feasible. Consultant reserves the right to reassign its employees or subcontractors currently assigned to the Suspended Services and not designated as Essential Project Team Members to other client projects. Consultant cannot commit to USTS that the employees or subcontractors not designated as Essential Project Team Members will be available when USTS determines to resume the Suspended Services. However, Consultant will provide other employees or subcontractors to USTS consistent with the standards of Section 2.4 of this Agreement to finish the Services. In no event shall the suspension of any Statement of Work be longer than 60 days from the actual date of the suspension.

14.3. **Consultant Termination.** Consultant may terminate one or more Statements of Work hereunder, if (i) USTS has failed to make a payment due under Article 7 in connection with such Statement of Work or Statements of Work, (ii) such payment is not subject to a good faith dispute, and (iii) no earlier than thirty (30) calendar days after the payment's due date Consultant gives written notice of its intent to terminate. In the event that Consultant is terminating all then effective Statements of Work pursuant to the preceding sentence, such termination shall also terminate this Agreement. In addition, Consultant may terminate this Agreement if, for a period of no less than twenty four (24) consecutive months, no Statements of Work are in effect between USTS and Consultant.

14.4. **Effects of Termination.**

14.4.1. **Remedies.** USTS agrees to pay Company for Services rendered through the date of termination of the applicable Statement of Work. In the event of a USTS Termination for Cause other than as a result of a Force Majeure event, Consultant shall be liable to USTS for any direct damages (including costs of cover) resulting from the occurrence giving rise to termination. Termination shall not constitute a party's exclusive remedy for any default, and neither party shall be deemed to have waived any of its rights accruing hereunder prior to such default. If either party terminates this Agreement or any Statement of Work hereunder as a result of a claimed default by the other party and such other party does not agree that a default was committed, then such other party shall have the right to avail itself of all defenses and remedies available to it at law, in equity, by statute, or otherwise.

14.4.2. **Transition.** In the event of any termination or expiration of this Agreement or any Statement of Work hereunder, Consultant shall cooperate reasonably in the orderly wind-down of the Services being terminated and/or transition thereof to other service providers provided

that Consultant is not obligated to provide more than 30 Business Days to such transition unless such other timeframe is agreed upon by the parties. The Services to be provided by Consultant during the orderly wind-down and/or transition shall be defined in a Statement of Work agreed to by the Parties with Consultant to be compensated for such Services at its standard rates for the Consultant Personnel involved in the delivery of the Services that are then in effect at the time the Services are to be performed.

14.4.3. **Survival**. The obligations and rights of the parties pursuant Articles 1, 8, 9, 10, 11, 13 and 16 and Sections 14.4.2, 14.4.3 and 15.2 hereof shall survive the termination or expiration of this Agreement.

## 15. Compliance Matters

15.1. **USTS Corporate Policies**. Consultant shall, and shall cause its Subcontractors and employees to, abide by the following:

15.1.1. **Security**. All Consultant personnel (including personnel of any Subcontractors) performing Services on USTS' site shall be subject to and shall at all times conform to USTS's security rules and requirements for the protection of USTS's plant, materials, equipment and personnel while on USTS premises provided that Consultant has received an advance written copy of such policies for Consultant Legal review prior to entry onto USTS' site.

15.1.2. **Computer Information and Access**. Provided Consultant receives such rules in advance for Consultant legal to review, Consultant shall comply with all rules of USTS concerning access to computers of USTS and all Affiliates and use of computer data and software. Prior to performing any Services pursuant to this Agreement, Consultant shall review and approve of any USTS standard forms that are required by Consultant's personnel to execute concerning access protection and data/software security. USTS shall issue to Consultant personnel access mechanisms including, but not limited to, access IDs, passwords, and access cards that are to be used only by Consultant personnel to whom they are issued.

15.1.3. **Other Policies**. Provided that Consultant receives the USTS corporate policies in advance of performing Services at a USTS site and has time its legal to review and approve them, Consultant shall, and shall cause its Subcontractors and employees to, abide by all USTS corporate policies that may be established by USTS from time to time while performing Services on USTS' site.

15.2. **Legal Compliance**. Consultant and USTS shall at all times perform their respective obligations hereunder in compliance in all material respects with all applicable laws and regulations, and in such a manner as not to cause the other to be in material violation of any applicable laws or regulations.

16. **Miscellaneous**

16.1. **Amendments.** Except as otherwise expressly provided herein, this Agreement may not be modified, amended, or in any way altered except by a written agreement signed by the parties hereto that states it is an amendment to this Agreement or by a written agreement pursuant to Article 6 or Sections 8.2 or 8.3.

16.2. **Assignment.** Except as set forth below, Consultant shall not assign this Agreement nor delegate any of its duties, in whole or in part, without the prior written consent of USTS. In no event shall USTS's consent be construed as discharging or releasing Consultant in any way from the performance of its obligations under this Agreement. Consultant may with the consent of USTS, which shall not be unreasonably withheld or delayed, assign its rights and obligations hereunder to any affiliate or successor to all or substantially of the business or assets of Consultant. USTS may assign this Agreement or delegate its duties, in whole or in part, without any consent of Consultant. An assignee of either party authorized hereunder shall be bound by the terms of this Agreement and shall have all of the rights and obligations of the assigning party set forth in this Agreement. If any assignee refuses to be bound by all of the terms and obligations of this Agreement or if any assignment is made in breach of the terms of this Agreement, then such assignment shall be null and void and of no force or effect.

16.3. **Audits.** USTS, at any time and from time to time, but not more often than once in any twelve (12) month period, upon advance written notice to Consultant of no less than ten (10) business days and at USTS's sole expense, may audit or cause to be audited and verify the accuracy of Consultant's invoices to USTS. USTS and its authorized agents and representatives shall have access to inspect and copy such books and records of Consultant that are related to the provision of Services for purposes of such audit during normal business hours; provided, however, that if such audit discloses inaccuracies in Consultant's invoicing of five percent (5%) or more during the audited period then Consultant shall immediately refund to USTS the full amount of the inaccuracy and reimburse USTS for its actual, documented cost of such audit.

16.4. **Contract Interpretation.**

16.4.1. **Captions; Section Numbers.** Article, section and paragraph numbers and captions are provided for convenience of reference and do not constitute a part of this Agreement. Any references to a particular Section of this Agreement shall be deemed to include reference to any and all subsections thereof.

16.4.2. **INTENTIONALLY DELETED.**

16.5. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall be deemed the same agreement.

16.6. **Entire Agreement; Order of Precedence.** This Agreement, together with all Statements of Work and all documents expressly referred to herein, constitutes the complete and exclusive statement of the agreement of the parties with respect to the subject matter hereof and supersedes all prior proposals, understandings, and agreements, whether oral or written, between the parties with respect to the subject matter hereof, including but not limited to any non-disclosure agreements previously entered into by and between the parties. In case of conflict the order of precedence of the documents constituting this Agreement is as follows, each listed document superseding in the event of any conflicting provision in a later listed document: (1) Agreement text (including Exhibit A); (2) the Statements of Work; and (3) any other document that makes specific reference to this Agreement. In the event Consultant submits work orders, change orders, invoices or other similar documents for accounting or administrative purposes or otherwise, no pre-printed or similar terms and conditions contained in any such form shall be deemed to supersede any of the terms and conditions herein without express written approval (making specific reference to, and in compliance with, Section 16.1 and this Section 16.6) by USTS.

16.7. **Expenses.** Each party shall be responsible for, and shall pay, all expenses paid or incurred by it in connection with the planning, negotiation, and consummation of this Agreement.

16.8. **Force Majeure.** Neither party shall be liable for any failure or delay in performing its obligations under this Agreement, or for any loss or damage resulting therefrom, due to acts of God, the public enemy, terrorist activities, riots, fires, and similar causes beyond such party's control. In the event of such failure or delay, the date of delivery or performance shall be extended for a period equal to the time lost by reason of the failure or delay or a longer period of time that is mutually agreed upon by the parties; provided that the party affected by such delay is using reasonable commercial efforts to mitigate or eliminate the cause of such delay or its effects and, if events in the nature of the force majeure event were foreseeable, used commercially reasonable efforts prior to its occurrence to anticipate and avoid its occurrence or effect. USTS shall have no obligation to make any payments to Consultant during the period of failure or delay. Each party shall notify the other in writing promptly of any failure or delay in, and the effect on, its performance. Notwithstanding the foregoing, Consultant shall not be excused from its performance hereunder in the event of a strike, walkout, work stoppage or other labor dispute affecting its Personnel, those of USTS or those of a third party.

16.9. **Further Assurances.** USTS and Consultant each agree to execute and deliver any appropriate instruments or documents to confirm the assignments and rights and licenses provided for herein and to enable the other to perfect the same by filing, registration or otherwise in any state, territory, or country, as may be reasonably requested and prepared by such other from time to time.

16.10. **Governing Law.** This Agreement shall be governed by and interpreted in accordance with the internal substantive laws of the State of New York. The

parties agree that all actions and proceedings arising our of or related to this Agreement shall be brought only in a state or federal court located in Westchester County, New York, and the parties hereby consent to such venue and to the jurisdiction of such courts over the subject matter of such proceeding and themselves.

16.11. **Independent Contractor.** Consultant is an independent contractor; nothing in this Agreement shall be construed to create a partnership, joint venture, or agency relationship between the parties. Each party shall be solely responsible for payment of all compensation owed to its employees and agents, as well as employment related taxes. Subject only to the terms of this Agreement, Consultant shall have control of its agents and employees engaged in the Services. Consultant shall ensure that neither it nor its agents or employees shall act or hold themselves out as agents or employees of USTS.

16.12. **Insurance.**

Consultant shall maintain during the term of this agreement at its own expense and without reimbursement from USTS the insurance coverage specified below. The coverage provided must be placed with insurance companies having a BEST rating of no less then A-IX. Prior to the commencement of any of the Services, Consultant shall provide to USTS, at One Parkway North Boulevard Suite 100 Deerfield, IL 60015, Certificate(s) of Insurance evidencing the following insurance with the respective insurers to endeavor to provide thirty (30) days prior written notice in the event of cancellation or any material changes in any policies.

a. Commercial General Liability Insurance written on an occurrence form, including coverage for Premises and Operations; Products and Completed Operations (with coverage continuing for two (2) years after completion of the Services) with limits of liability not less than:

$1,000,000 Bodily Injury & Property Damage per Occurrence

$2,000,000 Bodily Injury & Property Damage Aggregate

$1,000,000 Bodily Injury & Property Damage Product/Completed Operations

$1,000,000 Personal and Advertising Injury

United Stationers Technology Services LLC and its parent and affiliates are to be named as Additional Insured on a primary and non-contributory basis with respect to Consultant's performance of Services.

b. Umbrella or Excess Liability coverage of $5,000,000 per occurrence

c. Workers' Compensation (including occupational disease) in accordance with statutory limits and Employer's Liability in an amount not less than $1,000,000 each accident, $1,000,000 disease each Employee, and $1,000,000 disease policy limit. The policy must include a Waiver of Subrogation in favor of United Stationers Technology Services LLC and its parent and affiliates.

d. Commercial Automobile Liability Insurance written on an occurrence form in an amount not less than $1,000,000 combined single limit for bodily

injury and property damage liability including Non-Owned and Hired automobile liability.

c.    Professional or Errors and Omissions Liability Insurance in an amount not less than $5,000,000 each claim with coverage continuing for three (3) years after completion of the Work.

16.13.  Notice.  Any notice or other document or communication required or permitted hereunder to the parties hereto shall be deemed to have been duly given only if in writing and delivered by any of the following methods:  (i) certified U.S. mail, return receipt requested, postage prepaid, to the address of the receiving party as set forth below or such other address as such party may dictate according to the notice provisions hereof; (ii) hand delivery to the person specified below or any other person so designated according to the notice provisions hereof; or (iii) facsimile directed to the person specified below at the facsimile number listed below, or such other person or facsimile number so designated according to the notice provisions hereof; with a copy of all such notices delivered to counsel specified below or as such party may dictate in accordance with the notice provisions hereof.  Notices shall be deemed delivered when received by the party being notified.

If to Consultant, all notices shall be addressed and delivered to:

> IDS Scheer Americas, Inc.
> 1055 Westlakes Drive, Suite 100
>
> Berwyn, PA 19312
>
> Attn:Tom Bender

With a copy to:

> IDS Scheer Americas, Inc.
> 1055 Westlakes Drive, Suite 100
> Berwyn, PA 19312
>
> Attn: Legal Department

If to USTS, all notices shall be addressed and delivered to:

> United Stationers Technology Services LLC.
> One Parkway North Boulevard, Suite 100
> Deerfield, Illinois 60015-2559
> Attn: President

With a copy to:

> United Stationers Supply Co.
> One Parkway North Boulevard, Suite 100

Deerfield, Illinois 60015-2559
Attn: General Counsel

16.14. **Publicity**. Without USTS's express prior written consent, which it may provide in its sole discretion, Consultant shall not use USTS's name or the name of any Affiliate of USTS, or any divisions or business units of any of them, or the name of any product or service of any of USTS or its Affiliates, in connection with any marketing, advertising, or other publicity.

16.15. **Severability**. If any provision of this Agreement or its applications to particular circumstances is determined by a court of competent jurisdiction to be invalid or unenforceable, that provision (or its application to those circumstances) shall be deemed stricken and the remainder of this Agreement (and the application of that provision to other circumstances) shall continue in full force and effect insofar as it remains a workable instrument to accomplish the intent and purposes of the parties; the parties shall replace the severed provision with the provision that will come closest to reflecting the intention of the parties underlying the severed provision but that will be valid, legal, and enforceable.

16.16. **Third Party Rights Excluded**. This Agreement is an agreement between the parties, and confers no rights upon any of the respective employees, agents, or contractors or any other person.

16.17. **Time of essence**. Time is of the essence in the performance of the obligations of either party hereunder.

16.18. **Limitation on Hiring**. During the term of this Agreement and for a period of one (1) year following the termination or expiration of this Agreement, neither Party will, except with the other Party's prior written consent, directly solicit or offer employment to an employee of the other Party who was directly and substantively involved in the other's performance under this Agreement and/or Statement of Work.

16.19. **Waivers**. No purported waiver by any party of any default by any other party of any term or provision contained herein (whether by omission, delay or otherwise) shall be deemed to be a waiver of such term or provision unless the waiver is in writing and signed by the waiving party. No such waiver shall in any event be deemed a waiver of any subsequent default under the same or any other term or provision contained herein.

**IN WITNESS WHEREOF,** the parties have caused this Master Consulting Services Agreement to be executed and delivered by their respective, duly authorized representatives.

| UNITED STATIONERS TECHNOLOGY SERVICES LLC. | IDS SCHEER AMERICAS, INC. |
|---|---|
| By: _~~[signature]~~ BENT_ | By: _[signature]_ |
| Its: _PRESIDENT_ | Its: _[signature] Vice General Manager_ |

## Exhibit A
## Contract Definitions

"Acceptance" has the meaning set forth in Section 5.1.

"Acceptance Criteria" has the meaning set forth in Section 5.1.

"Affiliate" of an entity means any entity which, directly or indirectly, controls, is controlled by or is under common control with such entity, where control means the ability to direct the affairs of an entity through ownership of voting interest, contract rights or otherwise.

"Agreement" has the meaning set forth in the introductory paragraph hereof.

"Business Day" means any weekday other than a day designated as a holiday under the then applicable USTS holiday schedule.

"Commencement Date" means the date hereof, or, if earlier, the date on which Services relating to any Statement of Work hereunder were commenced by Consultant.

"Computer Virus" means a computer program attached to or a section of code hidden within the Software that performs a function unauthorized by Software published documentation which adversely affects USTS' computer systems.

"Confidential Information" means information, whether provided or retained in writing, verbally, by electronic or other data transmission or in any other form or media whatsoever or obtained through on-site visits at USTS or Consultant facilities and whether furnished or made available before or after the date of this Agreement, that is confidential, proprietary or otherwise not generally available to the public including, without limitation, trade secrets, marketing and sales information, product information, technical information and technology, information about trade techniques and other processes and procedures, financial information and business information, plans and prospects, together with any excerpts, reports or documents prepared by or on behalf of the recipient of the information incorporating, referred to or reflecting, in whole or in part, any portion of any such information. The USTS Data, Deliverables and Project Work Product shall be considered Confidential Information of USTS.

"Consultant" has the meaning set forth in the introductory paragraph hereof.

"Consultant Project Manager" has the meaning set forth in Section 2.4.2.

"Consultant Work Product" has the meaning set forth in Section 9.2.

"Deliverable" means any item delivered or produced by Consultant or required to be delivered or produced by Consultant as the result of Services rendered hereunder. Deliverables may include, but are not limited to, tangible and intangible work product, reports, designs, memoranda, lists, diagrams, schedules, analyses, procedures, specifications, programs, computer systems, documentation and like items, whether in hard copy or electronic media, incidental to, and containing and embodying the results of, the Services performed hereunder.

"Disabling Device" means any timer, clock, counter, or other limiting design or routine or uncorrected known vulnerability that may cause software or any data generated or used by it to

be erased, become inoperable or inaccessible, or that may otherwise cause such software to become temporarily or permanently incapable of performing in accordance with this Agreement, including, without limitation any Disabling Device that is triggered after use or copying of such software or a component thereof a certain number of times, or after the lapse of a period of time, or in the absence of a hardware device or after the occurrence or lapse of any other triggering factor or event or due to external input, including across a computer network. Disabling Device includes Software commonly referred to as a virus, worm, trojan horse or backdoor.

"Documentation" means the user, operations and training manuals related to the Services and Deliverables.

"Exception Report" has the meaning set forth in Section 5.2.

"Fees" has the meaning set forth in Section 7.1.

"General Knowledge" means intangible nonproprietary general know-how and expertise of a party relating to its business generally. General Knowledge does not include any specific expression, implementation or embodiment of such ideas, concepts, know-how or techniques.

"Indemnified Party" has the meaning set forth in Section 13.4.

"Indemnifying Party" has the meaning set forth in Section 13.4.

"Internal Purposes" means all internal purposes including past and potential future business purposes. An activity is for "Internal Purposes" of an entity without regard to whether performed by that entity or by a third party engaged on an outsourcing, consulting or similar basis, so long as the activity is for the internal purposes of the party engaging such third party. Internal Purposes of USTS also includes the provisions of services to current and future USTS Affiliates and to entities that hereafter become former USTS Affiliates.

"IP Assets" has the meaning set forth in Section 13.2.

"Key Positions" has the meaning set forth in Section 2.4.1.

"Person" means any natural person, corporation, limited liability company, limited liability partnership, general partnership, limited partnership, trust, association, governmental organization or agency, or other legal person or legally constituted entity of any kind.

"Personnel" of a party means the direct and indirect employees, subcontractors, and agents of such party.

"Provided Resources" has the meaning set forth in Section 3.1.

"Project Work Product" means all Work Product and Deliverables, created by or for or provided to USTS (whether solely by Consultant or Consultant's agents, or jointly by one or more of them and USTS or its agents) in the course of performing Services, except that Project Work Product shall not include Third Party Software.

"Services" has the meaning set forth in Section 2.1.

"Software" means computer programs and program objects of any kind (including source code and object code), program set-up and customization parameters and data and the tangible media

on which any of the foregoing are recorded and provided by Consultant as required under an applicable Statement of Work. Software excludes Third Party Software.

"Specifications" means the descriptions of the all other deliverables and Services hereunder, their components, and their capacities, functions, or methods, set forth in this Agreement, or any Statement of Work.

"Statement of Work" has the meaning set forth in Section 2.1.

"Subcontractor" means any Person (including any Consultant Affiliate) other than Consultant that provides Services to USTS on behalf of Consultant under this Agreement.

"T&M Rates" for a Statement of Work means the time and materials rates for services calculated as the hourly rates applicable to that Statement of Work.

"Third Party Software" means all Software (i) licensed by USTS under a separate agreement and provided to Consultant in order to perform the Services in a Statement of Work; and (ii) is specifically identified as Third Party Software in the applicable Statement of Work.

"USTS" has the meaning set forth in the introductory paragraph hereof.

"USTS Corporate Executive" means any Senior Vice President (or more senior executive) of USTS.

"USTS Data" means, in or on any media or form of any kind: (a) all data or summarized data related to USTS, and all data indexing such data, including data that is in USTS's databases or otherwise in USTS's possession on the Commencement Date or at any time from such date through the last day of the Term; and (b) all other USTS records, data, files, input materials, processed data, reports and forms that may be received, computed, developed, used, or stored by Consultant, or by any of Consultant's Subcontractors, for USTS in the performance of Consultant's duties under this Agreement.

"USTS Functions" has the meaning set forth in Section 4.1.

"USTS Interference" means either (i) a delay or default by USTS or (ii) the non-satisfaction, due solely to any act or omission of USTS, of any assumption stated in a Statement of Work hereunder, in either case to the extent it directly causes a material delay in Consultant's performance hereunder, an increase in the amount of services required of Consultant to perform the Services or other cost or expense to Consultant.

"USTS Project Manager" has the meaning set forth in Section 4.2.

"USTS Resources" has the meaning set forth in Section 3.1.

"USTS Termination for Cause" has the meaning set forth in Section 14.4.1.

"USTS Termination without Cause" has the meaning set forth in Section 14.2.2.

"USTS Work Product" has the meaning set forth in Section 9.5.

"Work Product" means (i) tangible and intangible work product, and improvements thereto, (ii) the writings in which any of the same are fixed (such as all reports, routines, data models, technical data, processes, designs, ), (iii)all proprietary rights (including, without limitation, rights under patent, copyright, trademark, service mark, trade dress, trade secret and other similar

laws) therein and (iv) all patents, patent applications and patent disclosures, together with all re-issuances, division, continuations, continuations-in-part, substitutes, extensions and reexaminations thereof, as well as any foreign counterparts of any of the foregoing.

# Exhibit B



IDS SCHEER
Business Process Excellence

## Draft - Statement of Work No. 1

This Statement of Work ("SOW") and the terms and conditions of the Professional Services Agreement ("Agreement"), dated 10/15/08 between IDS Scheer Americas, Inc. ("IDS") and United Stationers Technology Services LLC ("Client"), describe the services to be provided by IDS for Client and the compensation to be received in connection therewith.

Client and IDS agree that unless provided otherwise in this SOW, this SOW is the governing document until such time as a Master Consulting Services Agreement between IDS and Client has been finalized and executed.

1. **Services:** IDS will perform project SAP project preparation services required for the future launch of RTS 5.0 installations and RTS 6.0 development. The scope of these services will include the following:

- Review of the current solution, including its:
    - Processes
    - Functionality
    - Custom objects
- Review of the installation approach, including:
    - Methodology
    - Tools
    - Project plan
    - Repeatability assessment
- Evaluation of RTS 6.0 development approach, including:
    - Methodology
    - Development approach
    - Technical direction

Any changes to the scope defined here must be approved by authorized representatives of each party.

2. **Deliverables:** The Deliverable Stream and Deliverables to be provided under this Statement of Work together with the estimated completion date and fees for each Deliverable Stream are as follows:

**Phase: Project Preparation**

The focus of this effort will be to prepare the IDS Scheer team for future RTS 5.0 installations and RTS 6.0 development. Additionally, IDS Scheer will participate in critical knowledge transfer activities required to immediately support the customer's Vision conference as well as the installation and development efforts. The following deliverables will be produced as a result of this effort:

| Key Deliverables | Description |
| --- | --- |
| | Scope Document – A comprehensive overview of processes and functionality currently supported by the RTS solution. <br> Custom Object Evaluation – A high-level evaluation of the custom objects utilized within the solution that will identify requirements for custom objects and opportunities for use of standard SAP transactions. <br> RTS 5.0 Installation Approach Evaluation – A full review of the planned approach for installations with documentation about potential areas of improvement. <br> RTS 5.0 Installation Tools & Methods Evaluation – Following the review of the installation approach, a review of the current tools and methods used to support the installation will be conducted. IDS will document the current tools and identify areas where additional tools may be developed. |



RTS 6.0 Development Approach – Following an evaluation of the current RTS 5.0 solution, IDS will evaluate the best approach for launching RTS 6.0. Options will be identified and documented, citing their strengths and risks. Assessment will be used at the completion of blueprint to determine the realization approach.

Blueprint Project Plan Draft – A first version of the project plan, including the tasks, timelines, resource requirements, and levels of effort, will be created.

3.  Staffing

| Role | Resource | Week of 10/6 | Week of 10/13 | Total Days |
|------|----------|--------------|---------------|------------|
| Program Manager | Thomas Bender | 5 | 5 | 10 |
| Project Manager | Adam Brown | 5 | 5 | 10 |
| FI/CO Lead | Debbie Fuhrman | 5 | 5 | 10 |
| MM Lead | Chris Seaver | 5 | 5 | 10 |
| SD Lead | Stefanie Hanisch | 5 | 5 | 10 |
| Total | | 25 | 25 | 50 |

4.  Completion Criteria: The method(s) of determining the completion of each deliverable will be the following:

| Phase | Deliverables at End of Phase |
|-------|------------------------------|
| Project Preparation | Delivery of Agreed deliverables |



5. Fees and Expenses: The following sets out the basis for calculating the fees payable by Client to IDS with respect to this Statement of Work:

| Role | Resource | Daily Rate | Total Days | Extended Cost |
|------|----------|-----------|-----------|---------------|
| Program Manager | Thomas Bender | $1695 | 10 | $16,950 |
| Project Manager | Adam Brown | $1600 | 10 | $16,000 |
| FI/CO Lead | Debbie Fuhrman | $1450 | 10 | $14,500 |
| MM Lead | Chris Seaver | $1450 | 10 | $14,500 |
| SD Lead | Stefanie Hanisch | $1450 | 10 | $14,500 |
| Total | | | 50 | $76,450 |

### Travel and Living Expenses

Travel and living expenses (based on the destination being Deerfield, IL) for the project will be billed at actual (estimated to be 17% -20% of actual fees over the life of the Project) and payable in accordance with the terms and conditions of the Agreement. It is IDS policy to make every effort to minimize travel-and-living expenses and we will work with Client to keep them to a minimum.

IDS personnel shall receive a per diem for routine expenses of $64.00 per day while traveling. Meals and incidentals will be included in the per diem of $64.00. Lodging expense for project personnel will include and be limited to mid-range hotels/motels, for short term and extended stay hotels for long-term stays, etc. Travel expenses for project personnel shall include the actual and reasonable airfare and ground transportation, including mileage and rental car expense.

IDS is not licensing any software or providing any maintenance/support for software under this Statement of Work. Upon payment of fees and expenses under this Statement of Work title to all Key Deliverables described above shall vest in Client.

### Mutual Indemnification for injury and property damage:

IDS and Client shall defend, indemnify and hold each other and their officers, directors, employees, Affiliates and agents harmless from and against all losses, damages, liabilities, claims, actions and all related expenses (including reasonable attorneys' fees and expenses) by reason of injury or death to any person or damage to any tangible property arising or resulting from the presence of the Indemnifying Party its employees, contractors or agents on the premises of the Client, except that indemnification shall not be available to the extent of the other party's negligence or willful misconduct.

### Insurance Requirements:

IDS shall carry such worker's compensation, commercial general liability, automobile liability, umbrella or excess liability and professional liability (errors and omissions) insurance as is reasonable and customary for similar



enterprises and such insurance as is required by law; provided, however, in any event, but without limiting the generality of the foregoing, IDS shall carry the following:

a. Commercial General Liability on an occurrence form, including coverage for premises and operations and Professional Liability (Errors and Omissions) - $1,000,000 combined single limit per occurrence, $2,000,000 annual aggregate, or $1,000,000 bodily injury and $1,000,000 property damage with Client and its parent and affiliates to be named as additional insured on a primary and non-contributory basis.

b. Workers' Compensation (including occupational disease) – statutory requirement and $500,000 employer's liability. The policy must include a waiver of subrogation in favor of Client and its parent and affiliates.

c. Commercial automobile liability insurance written on an occurrence form, in an amount not less than $1,000,000 combined single limit for bodily injury and property damage liability including non-owned and hired automobile liability.

d. Such insurance shall be written with insurers of good standing and licensed to do business in the locations where the Services are to be performed and having policy holder ratings no lower than "A-" and financial ratings not lower than "VII" in the Best's Insurance Guide, latest edition in effect as of the date hereof. IDS shall provide Client with a Certificate of Insurance specifically evidencing the coverage required above, and stating the policy numbers and the inception and expiration dates of all policies. The Certificate of Insurance shall also provide for thirty (30) calendar days prior written notice to Client in the event of cancellation or any material alteration of any policy. The Certificate of Insurance shall be furnished to and/or be on file with Client prior to commencement of any work under this Agreement by IDS or any of its Subcontractors, if applicable.

6. Additional terms and conditions: The provisions set forth to this Statement of Work constitute the entire agreement.

IN WITNESS WHEREOF, IDS and Client have caused this Statement of Work to be executed and delivered by their respective duly authorized representatives as of the date first set forth above.

| IDS SCHEER AMERICAS, INC. | UNITED STATIONERS TECHNOLOGY SERVICES LLC |
|---|---|
| By: | By: |
| Printed Name: _Lutz Lambrecht_ | Printed Name: _S. D. BENT_ |
| Title: _SVP + Managing Director_ | Title: _PRESIDENT_ |
| Date: _10/4/08_ | Date: _10/13/2008_ |

| IDS SCHEER AMERICAS, INC. |
|---|
| By: |
| Printed Name: |
| Title: |
| Date: |



## SCOPE CHANGE REQUEST FORM

| Submitted by: | Thomas Bender | Date: | 10/30/2008 | Change Number | 1 |
|---|---|---|---|---|---|
| Requested by: | Thomas Bender | Dept.: | | | |

### Section 1: Area Affected

| SAP Module: | | FICO | SD | | MM | | PS | | BW | | ABAP | x | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Priority:    X  Critical          Important          Desirable

Business Area:    Project Management

### Section II: Description of Proposed Change

The current RTB project is operating under a statement of work that ended 10/17/2008. This change order extends the agreement reached under the original statement of work through November 7th, 2008, enabling the IDS team to continue the blueprint phase until the master consulting services agreement and its accompanying statement of work are in place.



**Investigation:**

| IDS Scheer Program Manager: | Thomas Bender | Date: | 10/21/2008 |
|---|---|---|---|
| Comments: | | | |
| Client Project Manager: | Matt Goldsby | Date: | 10/21/2008 |
| Comments: | | | |

**Impact Analysis**

**Estimated Consulting Effort: 135 total days (15 days, 9 consultants)**

**Budget: $20X,925.00 (see attached for details)**

**Assumptions: None applicable**

Disposition:  ☐ Approved  ☐ Deferred  ☐ Rejected  ☐ On Hold  Date:

**Approval for Implementation**

| Steering Committee: | Dave Bent Lutz Lambrecht | Date: 10/21/2008 |
|---|---|---|
| Signed By: | BENT  11/12/08 | Date: |
| Comments: | | |

**IDS SHEER**

| Role | Name | Days | Rate | Total |
|------|------|------|------|-------|
| Program Manager | Thomas Bender | 15 | $1,695.00 | $25,425.00 |
| Project Manager | Adam Brown | 15 | $1,600.00 | $24,000.00 |
| MM Consultant | Chris Seaver | 15 | $1,450.00 | $21,750.00 |
| FI/CO Consultant | Debbie Fuhrman | 15 | $1,450.00 | $21,750.00 |
| SD Consultant | Stefanie Hanisch | 15 | $1,450.00 | $21,750.00 |
| Basis Consultant | Marco Koster | 15 | $1,300.00 | $19,500.00 |
| ABAP/ Interface Consultant | Paul Freeman | 15 | $1,450.00 | $21,750.00 |
| BPM Consultant | Hitesh Patel | 15 | $1,600.00 | $24,000.00 |
| BPM Consultant | Steve Walker | 15 | $1,600.00 | $24,000.00 |
| | | | Grand Total | $203,925.00 |



**IDS SCHEER**

## SCOPE CHANGE REQUEST FORM

| Submitted by: | Thomas Bender | Date: | 12/1/2008 | Change Number | 2 |
|---|---|---|---|---|---|
| Requested by: | Thomas Bender | Dept.: | | | |

| SAP Module: | | FICO | SD | MM | PS | BW | ABAP | x | Other |
|---|---|---|---|---|---|---|---|---|---|
| Priority: | X Critical | | | Important | | Desirable | | | |
| Business Area: | Project Management | | | | | | | | |

**Section 2: Description of Proposed Change**

The current RTS project is operating under a statement of work that ended 10/17/2008. This change order extends the agreement reached under the original statement of work and a previous change order through December 19th, 2008, enabling the IDS team to continue the blueprint phase until the master consulting services agreement and its accompanying statement of work are in place.



Investigation

| IDS Scheer Program Manager: | Thomas Bender | Date: | 10/21/2008 |
|---|---|---|---|
| Comments: | | | |
| Client Project Manager: | Matt Goldsby | Date: | 10/21/2008 |
| Comments: | | | |

Impact Analysis

**Estimated Consulting Effort:  243 total days**

**Budget:  $359,660.00 (see attached for details)**

**Assumptions:  None applicable**

Disposition: ☐ Approved    ☐ Deferred    ☐ Rejected    ☐ On Hold    Date:

Approval for Implementation

| Steering Committee: | Dave Bent<br>Lutz Lambrecht | Date: 12/1/2008 |
|---|---|---|
| Signed By: | *8-D-J- BENT*<br>*J-JT* | Date: 12/4/D8 |
| Comments: | | |



| Role | Name | Days | Rate | Total |
|------|------|------|------|-------|
| Program Manager | Thomas Bender | 28 | $1,695.00 | $47,460.00 |
| Project Manager | Adam Brown | 28 | $1,600.00 | $44,800.00 |
| MM Consultant | Chris Seaver | 28 | $1,450.00 | $40,600.00 |
| FI/CO Consultant | Debbie Fuhrman | 28 | $1,450.00 | $40,600.00 |
| SD Consultant | Stefanie Hanisch | 28 | $1,450.00 | $40,600.00 |
| Basis Consultant | Marco Koster | 10 | $1,300.00 | $13,000.00 |
| ABAP/Interfaces Consultant | Paul Freeman | 28 | $1,450.00 | $40,600.00 |
| BPM Consultant | Hitesh Patel | 10 | $1,600.00 | $16,000.00 |
| Solution Manager Consultant | Michael Long | 10 | $1,450.00 | $14,500.00 |
| WM Consultant | David Hoover | 15 | $1,300.00 | $19,500.00 |
| SM Consultant | Sue Webb | 15 | $1,400.00 | $21,000.00 |
| BPM Consultant | Christine Goode | 5 | $1,600.00 | $8,000.00 |
| SD Consultant | Gaurang Rana | 10 | $1,300.00 | $13,000.00 |
| | | | Grand Total | $359,660.00 |



Statement of Work #2

**Statement of Work ("SOW")**
**issued December 20, 2008**
**RTS Blueprint**
**between**
**IDS Scheer Americas, Inc. ("IDS")**
**and**
**United Stationers Technology Services ("Client")**

This Statement of Work ("SOW"), with an effective date of December 20th, 2008, and the terms and conditions of that certain Master Consulting Services Agreement dated December 18th, 2008 (the "Agreement") between IDS Scheer Americas, Inc. ("IDS") and United Stationers Technology Services, LLC ("Client"), describe the Services to be provided by IDS for Client in connection with the Reseller Technology Solution project ("RTS") and the compensation to be received by IDS in connection therewith. Any capitalized terms not defined in this SOW shall have the meaning, if any, set forth in the Agreement.

Client and IDS agree that this SOW is subject to all the terms and definitions of the Agreement.

1.  <u>Services:</u> Services to be provided under this Statement of Work are outlined in Appendix 1. All Deliverables and Fees identified herein are based upon the scope defined in Appendix 1, and any changes to the scope defined in Appendix 1 must be approved by authorized representatives of each party.

2.  <u>Deliverables:</u> The Deliverable Stream and Deliverables to be provided under this Statement of Work are as follows:

    - Completion of a blueprint to document the requirements of the community of resellers of United Stationers Supply Co. ("United Dealers") for which the RTS system is intended. The scope of the blueprint shall include but not be limited to the scoped areas of Sales Distribution ("SD"), Material Master ("MM"), Finance ("FI"), Controlling ("CO"), Service Maintenance ("SM") and Warehouse Maintenance ("WM") (the blueprint document shall be referred to hereafter in this SOW as the "Blueprint").
    - Compile and assess a list of functional requirements for solutions for Tier 2 and Tier 3 United Dealers (which solutions shall be referred to in this SOW as the "Solution" or "Solutions" as the context requires).
    - A plan detailing the work needed following completion of the Blueprint to: (i) build out the Solution ("Realization"); (ii) design a method for efficiently and economically deploying the Solution with United Dealers ("Packaging"); and (iii) implementing the Solution with United Dealers ("Go-Live") (the "Project Plan").
    - Fixed cost proposal for the work required to complete the Project Plan (the "Proposal").
    - Define ARIS business process flows for scoped areas (to be incorporated into the Blueprint) (the "ARIS Process Flows").

3.  <u>Estimate of Consulting Effort:</u> Below is a breakdown of estimated work effort:

    - 220 Days of required support (60 days x 4 consultants)

4.  <u>Completion Criteria:</u> The method(s) of determining the completion of each Deliverable will be the following:



IDS Scheer Americas, Inc., 1055 Westlakes Drive, Suite 100, Berwyn, PA 19312

Telephone (610) 854 6200
Fax (610) 854 7952

| Deliverable | Completion Criteria |
|---|---|
| Blueprint including scoped areas (SD, MM, FI, CO, SM, WM) | Blueprint delivered, accepted and signed-off by USTS and SAP personnel |
| Assessment of functional requirements list for the Solutions | Blueprint delivered, incorporating functional requirements list |
| Project Plan for Realization, Packaging and Go-Live Phases of the Solution | Delivered Project Plan |
| Fixed cost Proposal for level of effort required for Realization, Packaging and Go-Live phases | Proposed Statement of Work delivered for Realization, Packaging and Go-Live |
| ARIS Process Flows for scoped areas (incorporated into Blueprint document) | ARIS Process Flows delivered |

5. **Fees and Expenses:** The following sets out the basis for calculating the fees payable by Client to IDS Scheer with respect to this Statement of Work:

IDS Scheer will bill the actual incurred fees. Effort and fees estimated as described below:

| Role | Key Position? | Days | Rate | Total |
|---|---|---|---|---|
| Program Manager | Yes | 20 | $1,695.00 | $33,900.00 |
| MM Consultant | | 20 | $1,450.00 | $29,000.00 |
| FI/CO Consultant | | 20 | $1,450.00 | $29,000.00 |
| SD Consultant | | 20 | $1,450.00 | $29,000.00 |
| SD Consultant | | 20 | $1,300.00 | $26,000.00 |
| Basis Consultant | | 20 | $1,300.00 | $26,000.00 |
| ABAP/Interfaces Consultant | | 20 | $1,450.00 | $29,000.00 |
| Conversions Consultant | | 20 | $1,450.00 | $29,000.00 |
| | | | **Grand Total** | **$230,900.00** |

Travel and lodging expenses are not included in the rates above. Travel will be billed at actual cost and will be managed in accordance with the Agreement and IDS Scheer's policy of "reasonable expense consistent with Client requirements.. A per diem of $64 per day will be applicable.

6. **Additional terms and conditions:** The provisions below are specific to this Statement of Work. Any conflict between the Agreement and this Statement of Work shall be resolved as described in the Agreement.

IN WITNESS WHEREOF, IDS and Client have caused this Statement of Work to be executed and delivered by their respective duly authorized representatives as set forth below.

IDS Scheer Americas, Inc.

By: _____

Printed Name: _Jim Waites_

Title: _Director_

Date: _31-DEC-2008_

United Stationers Technology Services, LLC

By: _____

Printed Name: _Bent_

Title: _President_

Date: _12/30/08_

SOW #3:

Page 2 of 6

CONFIDENTIAL

p. 3     Dec 30 08 07:20p     Dave & Gabriele Bent     630-858-0030



# Appendix 1

## Project Summary

### Project Background

The Solution is based on the SAP ERP application. This SOW focuses on the Deliverables described above including the work required to prepare the Blueprint, compile and assess requirements for the Solution, prepare a Project Plan and estimate for executing the Project Plan and define ARIS Process Flows. The Blueprint phase will gather the requirements that will be satisfied by the Solution and validate incremental requirements that should be built in as part of the Solution and determine the path forward for creating and delivering the solution to the market. Additionally, IDS will begin the development of a business plan during this phase, with the goal of identifying a successful go-to-market strategy and plan.

### Approach

Client, SAP and AT&T will all provide input to IDS for the Blueprint. The Blueprint will be used as the basis for the creation of the Solution. The Blueprint will define all functional requirements necessary for the successful implementation of the Solution by or for United Dealers.

### Location of Work

The primary working location for the implementation team will be at the SAP facility in Downers Grove, Illinois.

### Assumptions

- The Solution Blueprint will be based upon all knowledge and requirements provided to the IDS team by USTS, SAP and AT&T.
- The IDS team will attempt to utilize standard SAP functionality to address stated functional requirements of the United Dealers. If standard SAP functionality will not meet these functional requirements of United Dealers, IDS will define customized Solutions for the delivery of the functional requirements.
- The IDS team will be focused on designing the Solution for quick deployment, targeting a goal of less than 50 man-days of effort for the installation of the Solution at a United Dealer.
- 
- USTS shall be responsible for obtaining the input of Comergent on issues related to E-commerce functionality identified by United Dealers
- IDS shall oversee the development of a Comergent E-commerce blueprint by USTS and be responsible for ensuring that the E-Commerce outputs are formatted in alignment with the Blueprint, including the ECC back office.
- IDS is responsible for the Realization of the development of the ECC back office and the Comergent E-Commerce portion of the Solution.
- Adequate access to USTS and United Dealer subject matter experts will be provided to IDS project personnel for the purpose of facilitating the completion of the Deliverables.

IDS Scheer - USTS Statement of Work No 2 28-Dec-08 TB clean.doc



IDS Scheer Americas, Inc. 1055 Westlakes Drive, Suite 100, Berwyn, PA 19312

Telephone (610) 854 6800
Fax        (610) 854 7382

## Scope

The chart below depicts the scope at the scenario level. As the workshops commence details processes required to support second generation will be defined and documented to allow for the next phase.



CONFIDENTIAL


## Responsibilities

The following table is a summary of the roles and responsibilities of IDS and USTS.

| Role | Responsible |
|------|-------------|
| Project planning and management | IDS & USTS |
| Business Process Definition - ECC | IDS & USTS |
|     Conduct Business Process Workshops | IDS |
|     Identify/Communicate Business Process Requirements | USTS |
|     Complete Blueprint Document | IDS |
|     Blueprint Document Validation & Sign-off | USTS |
|     Blueprint Quality Assurance | IDS |
| ECC Technical Architecture Design | IDS & USTS |
| Business Process Definition - Comergent | USTS |
|     Conduct Business Process Workshops | USTS |
|     Identify/Communicate Business Process Requirements | USTS |
|     Complete Blueprint Document | USTS |
|     Blueprint Document Validation & Sign-off | USTS |
|     Blueprint Quality Assurance | USTS |
| Comergent Technical Architecture Design | USTS |
| Tier 2 & Tier 3 scope definition | USTS |
| Business Plan Development | IDS |
| Sales Pipeline Development | USTS |
| RTS Transition Planning | IDS & USTS |

## Scope Changes

In the event Client requests additional services outside the scope of this SOW, it is understood by the parties that IDS Scheer shall proceed with the current SOW until a Change Request is accepted and authorized in writing. For the purposes of this SOW, each Change Request accepted and authorized as set forth above, will constitute a formal change to this SOW. Each Change Request will be analyzed to determine cost to implement and the impact to the current schedule. Analysis and implementation of the approved Change Request will be billed at the stated rates. Additionally, all change requests must be approved by the Client's Program Manager.

## SOW Issue Resolution

Any issue under this SOW that may jeopardize the ability to meet project deliverables if not resolved in a timely manner must be communicated in writing to the other party according to the following procedure:

### IDS Scheer Identified Issue

- IDS Scheer Project Manager completes Change Request detailing issue definition, impact analysis, recommended Solution(s), and requested resolution date
- Client Project Manager reviews Change Request
- If Client Project Manager can resolve, resolution is noted and approved.
- If issue cannot be resolved by Client Project Manager, issue will be escalated to the project steering committee for review.
- If Steering Committee can resolve, resolution is noted and approved

 

IDS Scheer Americas, Inc. 1055 Westlakes Drive, Suite 100, Berwyn, PA 19312    Telephone (610) 854 6800   Fax (610) 854 7382

- If Steering Committee cannot resolve, the dispute resolution process set forth in the Agreement will be followed.

**Client Identified Issue**

- Client Project Manager completes Change Request detailing issue definition, impact analysis, recommended solution(s), and requested resolution date
- IDS Scheer Project Manager reviews Change Request
- If IDS Scheer Project Manager can resolve, resolution is noted and approved.
- If issue cannot be resolved by IDS Scheer Project Manager, issue will be escalated to the project steering committee for review.
- If Steering Committee can resolve, resolution is noted and approved
- If Steering Committee cannot resolve, the dispute resolution process set forth in the Agreement will be followed.

IDS Scheer - USTS Statement of Work No 2 28-Dec-08 TB clean.doc


**Statement of Work 12**

**Statement of Work ("SOW")**
**issued December 20th, 2008**
**RTS Installation**
**between**
**IDS Scheer Americas, Inc. ("IDS")**
**and**
**United Stationers Technology Services ("Client")**

This Statement of Work ("SOW"), with an effective date of December 20th, 2008, and subject to the terms and conditions of that certain Master Consulting Services Agreement dated December 18th, 2008 ("Agreement") between IDS Scheer Americas, Inc. ("IDS") and United Stationers Technology Services, LLC ("Client" or "USTS" as the context requires), describe certain Services to be provided by IDS for Client in connection with the Reseller Technology Solution project ("RTS") and the compensation to be received in connection therewith. Any capitalized terms not defined in this SOW shall have the meaning, if any, set forth in the Agreement.

Client and IDS agree that this SOW is subject to all the terms and definitions of the Agreement.

1. Services: The Services to be provided under this Statement of Work are the following:

   - Consulting Services to support the deployment of the RTS solution at Economy Office Supplies by SAP
   - Consulting Services to lead the deployment of the RTS solution through and including go-live at two "tier 3" resellers of United Stationers Supply Co. ("United") to be identified by USTS.
   - Consulting Services to identify and document means for improving future installations of RTS at tier 3 resellers of United.

2. Deliverables: The Deliverable Stream and Deliverables to be provided under this Statement of Work are as follows:

   - Acknowledgement by SAP of effective support provided by IDS during the successful installation of RTS at Economy Office Supplies through and including go-live
   - Successful installation of RTS at two additional tier 3 United resellers (to be identified by USTS) led by IDS through and including go-live
   - Draft version of installation methodology for the installation of RTS at tier 3 United resellers
   - RTS installation process improvement list for tier 3 United resellers
   - Identification of design improvements for RTS as applied to tier 3 United resellers.
   - Documentation of the transfer of tier 3 installation knowledge from SAP team members to IDS team members

3. Estimate of Consulting Effort: Below is a breakdown of estimated work effort:

   - 220 Days of required support (60 days x 4 consultants)

4. Completion Criteria: The method(s) of determining the completion of each Deliverable will be the following:

| Deliverable | Completion Criteria |
|---|---|
| Support for the installation by SAP of Economy Office Supplies | SAP acknowledgement of effective support provided by IDS during the successful installation of RTS at Economy Office Supplies through and including go-live |





| Load installation effort for two additional tier 3 United resellers (to be identified by USTS) | Successful installation of required configuration and data loads for two tier 3 United resellers through and including go-live |
| Draft version of RTS installation methodology for tier 3 United resellers | Delivered draft methodology document for installation of RTS at tier 3 United resellers |
| RTS installation process improvement list for tier 3 United resellers | Delivered draft methodology document for installation of RTS at tier 3 United resellers |
| RTS design improvement report as applied to tier 3 United resellers | Delivered RTS improvement as applied to tier 3 United resellers |
| Transfer of knowledge of RTS installation at tier 3 United resellers from SAP team members to IDS team members | Delivered methodology document confirming the transfer of RTS installation knowledge from SAP to IDS |

5. **Fees and Expenses:** The following sets out the basis for calculating the fees payable by Client to IDS Scheer with respect to this Statement of Work:

IDS Scheer will bill the actual incurred fees. Effort and fees estimated as described below:

| Role | Key Position | Days | Rate | Total |
|------|--------------|------|------|-------|
| MM Consultant | No | 75 | $1,300.00 | $97,500.00 |
| FI/CO Consultant | No | 5 | $1,300.00 | $6,500.00 |
| Conversions Consultant | No | 70 | $1,300.00 | $91,000.00 |
| SD Consultant | No | 75 | $1,300.00 | $97,500.00 |
| Methodology/Documentation Consultant | No | 75 | $1,200.00 | $90,000.00 |
| | | | **Grand Total** | **$382,500.00** |

Travel and lodging expenses are not included in the rates above. Travel will be billed at actual cost and will be managed in accordance with the Agreement and IDS Scheer's policy of "reasonable expense consistent with Client requirements". A per diem of $64 per day will be applicable.

6. **Additional terms and conditions:** The provisions below are specific to this Statement of Work. Any conflict between the Agreement and this Statement of Work, will be resolved as provided in the Agreement.

IN WITNESS WHEREOF, IDS and Client have caused this Statement of Work to be executed and delivered by their respective duly authorized representatives as set forth below.

IDS Scheer Americas, Inc.

By:

Printed Name: Jim WAITES

Title: DIRECTOR

Date: 31-DEC-2008

United Stationers Technology Services, LLC

By:

Printed Name: BENT

Title: PRESIDENT

Date: 12/30/2008




Telephone (610) 854 6800
Fax        (610) 854 7382

**FI Statement of Work  No. 1 ("SOW")**
**Issued January __, 2009**
**Project/Program Manager with FI Emphasis**
**between**
**IDS Scheer Americas, Inc. ("IDS")**
**and**
**United Stationers Technology Services LLC ("Client" or "USTS")**

This Statement of Work ("SOW"), with an effective date of December 1, 2008 and the terms and conditions of that certain Master Consulting Services Agreement dated  December 18, 2008 (the "Agreement") is between IDS and Client, and describes the Services to be provided by IDS for Client and the compensation to be received in connection therewith. Any capitalized terms not defined in this SOW shall have the meaning, if any, set forth in the Agreement.

Client and IDS agree that this SOW is subject to all the terms and definitions of the Agreement, with any conflict between this SOW and the Agreement to be resolved in favor of the Agreement.

1. <u>Services:</u>  The Services to be provided under this Statement of Work are the following:

   - Augment Client's SAP knowledge by serving as an advisor to the USTS team engaged in Wave 2 of the USTS SAPphire project (the "Project").
   - Assist in the coordination of SAP Financials (FI-AR and FSCM) implementation by USTS.
   - Review and contribute to the creation of Project plans, resource plans, timelines and other project tools provided by Client's implementation consultant, Infosys.
   - Direct and coordinate activities of the USTS team to ensure USTS delivers on all Project tasks.
   - Monitor and report on the progress toward key milestones of the Infosys and USTS Project teams.
   - Provide guidance to the USTS change management team to ensure the organization's readiness for go-live.
   - Contribute to the final process design by providing expert knowledge of SAP system capabilities.
   - The responsibility for Project execution and Project delivery remains with Infosys.  IDS' role under this SOW is to provide independent review and advice to USTS and to direct USTS and Infosys resources to meet Project deliverables.
   - Provide knowledge transfer to new USTS Program Manager when hired.
   - Provide quality assurance review of the final Business Process Requirements (BPRs) documents.
   - Assist in the coordination and communication of BPRs and confirm proper delivery by Infosys of required SAP configuration to support the Project goals.

2. <u>Deliverables:</u>  The Deliverable Stream and Deliverables to be provided under this Statement of Work together with the estimated completion date and fees for each Deliverable Stream are as follows:

   - Deliver a written weekly summary report to USTS assessing Project status and making suggestions for upcoming efforts and milestones.
   - Deliver Risk Management Analysis document and monitor project risks
   - Deliver Project Change Management Control Process Document.
   - Deliver Project Issues Decision Matrix Document.
   - Deliver Security and Authorization Procedure Document.
   - Deliver a knowledge transfer document referencing all Deliverables and associated materials created or used during the engagement and review this documentation with USTS.

3. <u>Estimate of Consulting Effort:</u> Below is a breakdown of estimated work effort:

- Up to 80 Business Days of required support.

4. <u>Completion Criteria:</u> The method(s) of determining the completion of each Deliverable will be the following:

- Signoff of weekly timesheet by USTS (can be done via email correspondence)
- Delivery of written weekly summary reports
- Delivery of knowledge transfer document referencing all relevant materials created or used during the engagement
- Review of knowledge transfer document with the USTS Project team

5. <u>Fees and Expenses:</u> The following sets out the basis for calculating the fees payable by Client to IDS Scheer with respect to this Statement of Work:

IDS Scheer will bill the actual incurred fees. Effort and fees are estimated as described below:

Project/Program Manager    80 Business Days (4 Months Estimated)    @ $1,600 Per Day    =
$128,000

Consultant must be on-site for all hours billed. Consultant will be on-site Monday to Thursday each week unless prior client approval is provided. Travel and lodging expenses are not included in the rates above. Travel will be billed at actual cost and will be managed in accordance with IDS Scheer's policy of "reasonable expense consistent with client requirements." A per diem of $64 per day will be applicable.

8. <u>Additional terms and conditions:</u> The provisions below are specific to this Statement of Work. In the event of a conflict between the Agreement and this Statement of Work, the Agreement shall control.

IN WITNESS WHEREOF, IDS and Client have caused this Statement of Work to be executed and delivered by their respective duly authorized representatives as set forth below.

| IDS Scheer Americas, Inc. | United Stationers Technology Services LLC |
|---|---|
| By: | By: |
| Printed Name: *James K Waitt* | Printed Name: *Timothy S O'Hara* |
| Title: *Mgr Director* | Title: *VP IT EA* |
| Date: *2-Feb-09* | Date: *2/3/09* |

# CHANGE ORDER #1
## to
## FI STATEMENT OF WORK No. 1 ("SOW")
### Issued February 9, 2009
### Project/Program Manager with FI Emphasis
### between
### IDS Scheer Americas, Inc. ("IDS")
### and
### United Stationers Technology Services LLC ("Client" or "USTS")

This change order ("Change Order") shall serve to amend Statement of Work No. 1 ("SOW") to the Professional Services Agreement between IDS Scheer Americas, Inc. ("IDS") and United Stationers Technology Services LLC ("Client") effective February 9, 2009 (the "Agreement"). The parties agree to amend the SOW as follows:

1. Period of Performance: The estimated Consulting Effort as described in the SOW is extended:

    a. An estimated additional 22 days to perform same services described in the SOW;

    b. In order to lengthen the schedule to encompass the calendar month of April, 2009

2. The additional Services to be provided under this change order are the following:

    - Coordinate a System Sizing effort with appropriate USTS resources using final available Blueprint design details and custom development specifications.
    - Provide basic SAP Archiving knowledge details and coordinate an Archiving Planning effort utilizing appropriate USTS resources.
    - Coordinate and Monitor Security & Authorizations Testing

3. The deliverables associated with the additional services are:

    - Deliver a summary document outlining the baseline results of the Realization phase sizing effort by the project team with recommendation to change or not to change the size of the system.
    - Deliver a planning document outlining the choices for methods of archiving data from SAP.

4. The estimate of fees to be billed by Consultant is increased by $35,200 to a total of $163,200.00.

All other terms and conditions of the SOW remain unchanged.

The Effective Date of this Change Order shall be April 1 2009.

United Stationers Technology Services LLC

By: _Timothy S O'Hara_

Name: Tim O'Hara

Title: VP – IT Enterprise Applications

Date: 3/18/09

IDS SCHEER AMERICAS, INC.

By: _K Waite_

Name: Mgr Director

Title: James K Waite

Date: 3/18/09



## SCOPE CHANGE REQUEST FORM

| Submitted by: | Thomas Bender | Date: | 01/05/2009 | Change Number | 3 |
|---|---|---|---|---|---|
| Requested by: | Thomas Bender | Dept: | | | |

### Section 1: Area Affected

| SAP Module: | FICO | SD | MM | PS | BW | ABAP | x | Other |
|---|---|---|---|---|---|---|---|---|

Priority:    X   Critical         Important         Desirable

Business Area:    Project Management

### Section 2: Description of Proposed Change

The existing agreement between United Stationers and IDS Scheer as it pertains to resourcing the current project allows for 7 FTEs. For the months of January and February, United Stationers has agreed to pay IDS to increase the count to 8 FTEs to accommodate the increased workload associated with the contractual processes and agreements that will need to be finalized to complete the project. Specifically, Matt Goldsby will be retained by IDS ensure the continuity of critical business processes associated with the project.

Responsibilities associated with the headcount increase will include but not be limited to:

- Facilitate the negotiation of contracts and business issues related to the Comergent solution and its applicability to RTS

- Facilitate the negotiation of contracts and business issues relative to the success of RTS and third party vendors currently contributing in some fashion to the solution's operational success

- Facilitate the negotiation of contracts and business issues between SAP and IDS Scheer as it pertains to the preservation of certain duties and obligations previously secured through other agreement(s)

- Establishment of a dealer-led advisory panel composed of both live and prospective dealers for the purpose of reviewing the functionality scheduled for development in realization. This review will be conducted within the month of January, ideally.

- Overall project management assistance as deemed appropriate by the IDS Scheer Program Manager



## Section 3: Approvals

### Investigation

| IDS Scheer Program Manager: | Thomas Bender | Date: | 01/05/2009 |
|---|---|---|---|
| Comments: | | | |
| Client Project Manager. | TJ Crayne | Date: | 01/05/2009 |
| Comments: | | | |

### Impact Analysis

**Term of Extension: January, 2009 for 120 hours**

**February, 2009 for 105.6 hours**

**Rate: $155/hr**

**Total Project Impact: $34,968 plus travel expenses**

| Disposition: | ☐ Approved | ☐ Deferred | ☐ Rejected | ☐ On Hold | Date: |
|---|---|---|---|---|---|

### Approval for Implementation

| Steering Committee: | Dave Bent ~~Lutz Lambrecht~~ JIM WAITES | Date: 01/05/09 |
|---|---|---|
| Signed By: | *[signature]* BENT  *[signature]* | Date: 1/5/09  1/7/09 |
| Comments: | | |